And next we'll hear 22-638. Good morning, Mr. Houghtaling. How do you say your name, sir? Houghtaling. Houghtaling. Good morning. Good morning. Please come to the podium. You've reserved two minutes for rebuttal. Yes, ma'am. You may proceed. This case is extraordinary, tragic. It's over 12 years old. What's happened here is the defense team has basically been nonexistent in this case for completely four years right from the outset. Look at docket number 69. It was very clearly that one defense counsel, Gary Levine, came to court unprepared, didn't know anything about the case, didn't know if I was deposed or not. Which turns out the hearing revealed that I was actually scheduled to be deposed and my deposition was canceled on the same day by defense counsel. She's done this multiple times. Canceled three of my depositions. No notification. Defense counsel actually canceled my expert witness. That is a matter of this proceeding right now, deposition, with no notification at all whatsoever. You can see this very clearly in dockets 150, 153. The case is egregious. Defense counsel has littered my docket with multiple false sworn declarations, false misinformation, ad homine attacks. She makes up crimes and makes things up. I'm a pro se litigant, trying to hold the decor and manners in this court. I have had hearings produced, multiple, multiple hearings produced that very clearly and unequivocally establish the fact that this is an improper situation between defense counsel and magistrate judges. It's prejudicial. The magistrate was acting as a knight to protect the defendant. Wouldn't let her answer any questions, wouldn't let me ask any questions. Took an adversarial testing process and threw it out the window, okay? Defense counsel, and Mr. Mix here. Defense counsel has repeatedly, in her writings, declared and certified and gave sworn statements that the deposition company, Associated Reporters, is a neutral third party vendor. I have submitted documentation, 162 through 165, very clearly establish the fact that the New York State Attorney General's Office is under contract with Associated Reporters. So when the expert witness video deposition came, dropped back links, and I looked at it and said the deposition of Jeffrey Blaine Hotelling, MP340, that is not an originally archived video of Reed Novinsky's deposition evidence, which I raised concerns for and wrote Judge Wilford. C-150 went through my expert witness, wrote Judge Wilford. Defense counsel made some egregious comments, accused me of burning their journal. The Associated Reporters came back and said, you were off the record for three minutes. Defense counsel got a hold of them and said, no, no, no. They came back and said, we reviewed the archived video. Now you've only been off the record for 20 seconds. This is one issue here, just between defense counsel's integrity and truthfulness. Is there an officer of the court here practicing law in this circuit? Mr. Hotelling, thank you. That's your time. You have two minutes for rebuttal. So we'll hear from you again after Mr. Mix. It's going quick. Thank you. Thank you, sir. Mr. Mix. Please, the court. Sean Mix on behalf of Appellee Deborah Eaton. The issue in this case is whether the district court properly exercised its discretion in granting defendant's motion for sanctions, dismissing this case and awarding attorney's fees. The district court properly exercised its discretion in doing so. For over seven months, plaintiff ignored court orders directing him to respond to defendant's first set of interrogatories and discovery demands. During that time, he made serial filings unrelated to the merits of this case, despite multiple warnings from the court that such actions were sanctionable. In these filings, plaintiff acknowledged receipt of the demands. He acknowledged that the court had ordered him to respond to the demands, and he intentionally refused to comply with those orders. Thus, the district court properly found that each of the factors warranting dismissal under Rules 37 and 41 weighed in favor of dismissing this case and acted within its discretion in doing so. With respect to the attorney's fees, plaintiff has abandoned any claim that the district court abused its discretion in awarding attorney's fees, as he has not raised it in his appellate brief or here. In any event, he's offered no justification for his refusal to respond to the discovery demands or any reason why he'd be unable to pay the fees. The $2,925 amount is appropriate. The attorney below filed a declaration stating that she spent 13 hours preparing the relevant motion for sanctions, and she attached an itemized schedule detailing her work. She's got 10 years of experience, so that breaks down to about $225 an hour. Finally, plaintiff's remaining arguments regarding defense counsel on appeal and witness intimidation are meritless. You know, he's claimed that I inappropriately substituted counsel. I filed both my acknowledgment and notice of appearance and my notice of substitute counsel timely. They were accepted. I filed the document that's requested by this court in accordance with the local rules. As to his claims of witness intimidation, he fails to explain or substantiate these claims. In any event, we're representing Deborah Eaton in this case. These unnamed court officers are not a party to this proceeding. So in light of the above, unless the court has any other questions, we ask that the court affirm the district court's judgment dismissing this case and also deny plaintiff's motion for contempt of court that was referred to this panel. Thank you. Thank you. Mr. Riggs. Mr. Hodling, you have two minutes for rebuttal. Sir, you may return. Okay. The report and recommendation recommending dismissing this case is founded on the deceitful and dishonest decision to order docket 177, which is clearly and unequivocally established in docket 187, complete with hearing transcripts. They said I refused to withdraw my motions for sanctions. I have to withdraw my motions for sanctions probably no less than 15 or 16 times. I've made it very clear that my intent was not to cause Ms. McKay any type of problem. I just wanted her to come forth and be honest about the situation she created with my expert witness. My expert witness's deposition has been canceled pursuant to 30D3A. The report and recommendation is founded on dishonest information. You can easily review docket 177. Now take a look at docket 187, complete with transcripts. The scheduling order docket 211 clearly says expert witness is deadlines expired. 211 predates the order for motion to dismiss. 211 predates 219. It predates the report and recommendation 226. 211 clearly says expert witness discovery has expired. It predates 226 and 219. Decision in order, destroyed video not presented to the magistrate judge, which is not true. Docket 162 through 165 clearly showed there was a letter addressed directly to Judge Peterson, the magistrate judge, the clerk, and it was filed properly with the clerk with flash drives. It was never recognized by the magistrate judge. But it was addressed to him and it has his name right on it. So it was presented to him. The scheduling order, the magistrate judge wrote his own scheduling order. He signed his own name to his own scheduling order. The fact that it was not presented to the magistrate judge is redundant. How many times are you supposed to present this to the judge? He wrote it, he signed it, and he filed it. It's his scheduling order. It predates 219 and 226. 211 clearly predates those. It's a matter of math. The witness intimidation. I went to this courthouse. Every time I went to this courthouse, I've been to this courthouse probably 300 times throughout my litigation. I've been doing this case for 12 years. The minute that this case, I went down to file my appeal, I started getting police escorts. Searched down, police escorts following me up and down the business, walking to the clerk's office, standing next to my papers. Infringement of my rights as an American citizen, I'm a fully vested American citizen, afforded all the rights of American citizens in this country. These are public buildings. I'm escorted around these courthouses on a police escort with no sort of reason, no justification. It's clearly egregious. Trying to block my right to appeal. Trying to intimidate me. Trying to intimidate my constitutional right to fight for my rights. Can you imagine going to a courthouse? I've been probably 250 times. I know all the clerks by their names. I know their children. Merry Christmas. Ten years. Merry Christmas. How are you doing? Happy Easter. Happy holidays. Happy Halloween. Ten years. I know them. Celebrate what you don't celebrate. These clerks, I know them all by names. I know some of their children. Next thing you know, I'm escorted with the police up there. That's witness intimidation, very clearly. It's happened to me probably at least 25 times. And it's very upsetting. I understand, sir. That is your time. Would you like to make a brief wrap-up? This case, very clearly, was under a prejudicial judge. The master judge was prejudiced in an alliance with defense counsel. You can clearly see that in Docket 187. The January 20th hearing, the first thing I said, I said, Rita's expert witness, my deposition's been destroyed. It came with names changed on it. It has parts cut out of it, wiggles. The face is bent back and forth on it. It's not even labeled right. How did Rita DaVinci's archived video deposition get labeled, entitled, running, entitled, constantly running, heading all the way through it, the deposition of Jeffrey Blaine Hotelling? That clearly is not an archived video. All right. Mr. Hotelling, that is your time. Thank you, sir. Congratulations, judges, on your new appointments, and enjoy your journey. Happy holidays. The matter is submitted. That ends the initial panel that will hear our argument today. We'll take a brief recess. Thank you. Recess. Recess. Likewise. Enjoy. Recess. Recess. Recess. Recess. Good. Good.  Thank you. Thank you. That concludes today's hearing. So thank you very much. Good work. Thank you. Thank you. Thank you. Thank you. That concludes today's hearing.  Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you very much. Please be seated. We'll hear argument next in Numbers 21, 25, 47 and 21, 25, 76, Ittray Transcare Corporation. Mr. Perry. Thank you, Your Honor. And may it please the court. If I could start and perhaps finish with the damages awards in this case, which we submit should be set aside for two legal errors, two fundamental errors in their address and calculation. First, the courts below awarded damages without requiring the trustee to prove that the challenge transaction caused any harm to the estate. And I think it's important here to reflect on what the standard, the measure of damage is here. And everybody agrees. Under both theories of liability, the question is what the estate would have had had the transaction not occurred. That is the standard under Bamarco for the breach of fiduciary duty claim and under Madoff for the fraudulent transfer claim. And the trustee agrees with that standard in his brief at pages 59 and 66. So what would the estate have had if the transaction had not occurred? It would have had the assets. This was an asset foreclosure. This was a transaction that happened on February 24th after 20 days of chaos in which Ms. Tilton and her entities foreclosed on certain assets. Well, that's not really consistent with the Bankruptcy Court's findings, right? The Bankruptcy Court thinks it would have been operating as a going concern. Well, the going concern theory is how the trustee tried to fill the absence of harm. And I think it's important to separate them, Judge Manasci, into two separate questions. The first is did the estate lose anything as a result of the transaction? That is the question under fraudulent conveyance law and under fiduciary breach law. In fact, the Basho case, which the district court cited,